CHARLES MORTIMER MILLER, Plaintiff, *v.* MADISON' SQUARE GARDEN CORPORATION, Defendant.

Supreme Court, Trial Term, New York County, June 16, 1941.

*Irving Schneider* [*Arthur Hutter* of counsel], for the plaintiff.

*Chadbourne, Wallace, Parke & Whiteside* [*William J. Harnisch* and *James R. Jones* of counsel], for the defendant.

PECORA, J.   In this action plaintiff seeks to recover both general and exemplary damages from defendant, because of the latter's

publication of a picture of the plaintiff with the following inscription under it: " ' Broncho Charlie ' Miller (left), last of the pony express riders, racing a high wheel cyclist 50 years ago in London for six days. The Penny Illustrated Paper, London, November 19, 1887, reports ' Living horse defeated iron horse.' "

Plaintiff alleges that the publication was without his written consent; and that such use of his name and picture was for advertising and trade purposes, and in violation of sections 50 and 51 of the Civil Rights Law.

Defendant admits the publication, but denies it was made either for advertising purposes or for purposes of trade. Defendant has pleaded, as an affirmative and partial defense, that it published plaintiff's name and picture in response to plaintiff's request to give him publicity, and with his consent. Unless the plaintiff's consent were in writing, that defense would not be available as a complete defense to the cause of action. The statute referred to (Civil Rights Law, §§ 50 and 51) specifically grants a right of action to a living person whose name or picture is used by another " without first having obtained the written consent of such person." The use of a person's name or picture by another, with the oral consent of such person, may, however, be asserted as a partial defense in mitigation of damages. (*Lane* v. *Woolworth Co.*, 171 Misc. 66; affd., 256 App. Div. 1065.)

The evidence shows that the publication complained of was printed on the center double page of a forty-seven page booklet entitled " 6 Day Bike Race Magazine," which was sold by defendant for fifteen cents a copy to patrons attending a six-day bicycle race held at Madison Square Garden in this city, in the period between November 28 and December 4, 1937. On that center page were featured six other pictures of sporting events in bicyling, which did not relate in any way to plaintiff. Across the bottom of the page was a commercial advertisement of clothing, which likewise made no reference to plaintiff.

The booklet contained a number of articles about bicycle racing and other forms of sports, which are rather profusely illustrated with photographs of contestants and other prominent personalities in those fields. It also contained many other commercial advertisements of various products, none of which, however, referred to plaintiff. There were 24,946 copies of this booklet sold by defendant for a total sum of $3,741.90.

The defendant argues that this booklet, because of its general nature, was a magazine devoted to the dissemination of items having news value and of interest to the sports-loving public. It, therefore, invokes the principle applied in the case of *Colyer*

v. *Fox Publishing Co.* (162 App. Div. 297) to defeat the plaintiff's action. That argument overlooks the fact that the booklet also constituted, and was styled, the " official program " of the six-day bicycle race in progress during the period of the publication of the booklet, and was sold only in the arena where the race was being held; whereas the publication involved in the *Colyer* case was a weekly periodical having a general public sale and circulation.

Neither do I think that this case is governed by the rule laid down in *Jeffries* v. *N. Y. Evening Journal Pub. Co.* (67 Misc. 570), which case is also relied upon by defendant. In that case plaintiff was an outstanding pugilist; and the use made of his name and picture was in a series of articles published in defendant's daily newspaper, which dealt with the history of plaintiff as a professional pugilist. Assuming the soundness of the rule enunciated in the *Jeffries* case, there exists too wide a difference between a daily newspaper and an official program of a sporting event, to make that rule an appropriate one for the case at bar.

A close examination of the many authorities cited by the learned counsel on both sides, and of other adjudications, fails to reveal any case which is so factually comparable to the instant case as to render its determination a controlling principle here.

The evidence before this court establishes that the picture here involved was reprinted from the issue of November 19, 1887, of The Penny Illustrated Paper, of London. It shows the plaintiff, mounted on a horse, racing against a person mounted on a high-wheeled bicycle. That illustration was also used in a biography of the plaintiff, published in 1934, under the title of " Broncho Charlie," and written by one Gladys Shaw Erskine, who is plaintiff's business manager. According to plaintiff's testimony, the illustration and the inscription under it in defendant's booklet, correctly record the event to which they relate. Plaintiff also testified that an autographed copy of " Broncho Charlie " was given by Miss Erskine to a representative of defendant. This representative testified that plaintiff at that time requested that publicity be given to him by defendant. The plaintiff further testified frankly that the use of his name and picture by defendant had not subjected him to any ridicule nor caused him any humiliation whatever.

On the disputed issue as to whether plaintiff orally consented to the use of his name and picture by defendant, the evidence satisfies me that he did, and that it was calculated to aid plaintiff in his business of obtaining engagements for hire from persons desirous of exploiting their products through public exhibition of him.

Upon all of the evidence, I find that defendant used plaintiff's name and picture in technical violation of section 51 of the Civil Rights Law, but that plaintiff not only orally consented thereto, but has failed to show that he has sustained any actual damage therefrom. Hence, judgment is directed for plaintiff and against defendant, for the nominal sum of six cents.