**Boyd JARVIS, Plaintiff,**

v.

**A & M RECORDS, Seduction, Robert Clivilles, David Cole, and Vendetta Records, Defendants.**

**Civ. A. No. 90–2112 (HAA).**

United States District Court,
D. New Jersey.

April 27, 1993.

Sheila B. Beckett, Elizabeth, NJ, for plaintiff.

Alisdair J. McMullan and Peter Herbert, Cowan, Liebowitz & Latman, P.C., New York City, for defendants Seduction, Robert Clivilles and David Cole.

Weil Gotshal & Manges, New York City.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This matter comes before the court upon the following motions by defendants: (1) motion to strike the certifications submitted by plaintiff's attorney Sheila Beckett in opposition to defendants' substantive motions; (2) summary judgment on plaintiff's federal copyright of musical composition claim; (3) partial summary judgment on damages relating to plaintiff's federal copyright claim; (4) summary judgment dismissing defendant Seduction from the case; (5) summary judgment on plaintiff's federal sound recording claim; (6) partial summary judgment on plaintiff's state law claims.

For the reasons detailed, defendants' motions are granted in part and denied in part.

### I. Undisputed factual background

The facts of this case are undisputed and relatively simple. About a decade ago, Boyd Jarvis wrote a song entitled "The Music's Got Me." He recorded the song with his group, Visual, and copyrighted the composition together with the arrangement in November 1982. The song subsequently was released on Prelude Records, and the undisputed evidence shows that Prelude Records retains the copyright to the sound recording.

In 1989, defendant Robert Clivilles and David Cole wrote and recorded a song entitled "Get Dumb! (Free Your Body)" and the song was released in three formats on A & M Records and Vendetta Records, A & M's subsidiary label. The three relevant versions are: (1) "Get Dumb! Free Your Body" as it appears on the "b" side of a single record called "Heartbeat" by the defendant group Seduction; (2) a trio of versions of "Get Dumb! Free Your Body" that appear on another 12" single by Cole/Clivilles Music Enterprises, recorded by a group called The Crew (featuring Freedom Williams); (3) the cassette single the song "Get Dumb!"

In all three of the releases of "Get Dumb!", defendants digitally sampled sections of Mr. Jarvis's "The Music's Got Me." Digital sampling has been described as:

the conversion of analog sound waves into a digital code. The digital code that describes the sampled music ... can then be reused, manipulated or combined with other digitalized or recorded sounds using a machine with digital data processing capabilities, such as a ... computerized synthesizer.

Judith Greenberg Finell, *How a Musicologist Views Digital Sampling Issues*, N.Y.L.J. p. 5 n. 3 (May 22, 1992). Thus, digital sampling is similar to taping the original composition and reusing it in another context. In this case, then, throughout the defendants' songs, one occasionally hears an actual piece of "The Music's Got Me."

In 1990, Mr. Jarvis sued the defendants for copyright infringement. Defendants now move for summary judgment, on a variety of grounds. I will address these as they become relevant.

### II. Submitted Affidavits

As an initial matter, defendants move to strike the certifications of Sheila Beckett, plaintiff's attorney. Defendants contend that Ms. Beckett's certification may not be considered because a counsel's statement is not evidence and cannot create an issue of fact. Moreover, defendants contend that since the certifications are not based on personal knowledge, they cannot be used to create an issue of material fact and must be stricken.

Federal Rule of Civil Procedure 56(e) provides that in opposing a motion for summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 27 of the United States District Court Rules for the District of New Jersey further provides that:

Affidavits shall be restricted to statements of fact within the personal knowledge of the affiant. Argument of the facts and the law shall not be contained in affidavits. Legal arguments and summations in affidavits will be disregarded by the court and may subject the affiant to appropriate censure, sanctions or both.

There is no question that Ms. Beckett's submissions fall far short of the standard required by the federal and local rules. Her certification and brief are filled with unsupported factual allegations; her affidavit is replete with legal arguments.

But defendants' motion contains a certain element of "pot calling the kettle black" syndrome. The affidavit submitted on behalf of defendant Robert Clivilles, for example, is not exactly a model of compliance with the applicable procedural rules. First, Mr. Clivilles' affidavit states that, "[n]one of [the allegedly infringing portions of our work] were *qualitatively significant* to Jarvis' song as they were used in solely a peripheral, offhand way having no relationship to the central features of that work." (emphasis added). This statement is either a conclusory legal opinion or an argument based on the facts; it is certainly not a fact within the affiant's personal knowledge. Second, Mr. Clivilles states that "[t]he 'oohs' and the 'moves' and the words 'free your body' [portions taken plaintiff's song] are truly incidental portions of our recording used almost as background sound effects rather than an integral portion of the composition." This is not only a legal argument based on the facts, but the argument relies on a legally incorrect proposition. As defendants' counsel well knows, the test for substantial similarity is the reaction of a *lay ear*, not the reaction of the alleged infringer.

Third, Mr. Clivilles states that "[t]he assertion that we have somehow injured Mr. Jarvis' career is patently absurd." This also is not a fact based on Mr. Clivilles' personal knowledge but a legal conclusion concerning the amount of damages suffered by Mr. Jarvis as a result of defendants' actions. Finally, and even more irresponsibly, Mr. Clivilles states that "it is hard to believe that [a rerelease of Mr. Jarvis' recording] would be successful." Such a statement should not be included in an affidavit purportedly stating facts within the affiant's personal knowledge.

Additionally, Jonathan Blank's affidavit submitted on behalf of defendants concludes with the statement: "[Defendant Seduction's] only connection is that they performed the versions of the 'Heartbeat' song recorded on the Heartbeat 12" single and were *mistakenly included by plaintiff's counsel as defendant in this action.*" (emphasis added). When plaintiff's counsel has kept Seduction in the case for the past three years, it is difficult to see how Mr. Blanks would have personal knowledge of her intention in naming Seduction as a defendant.

In short, there is enough blame to go around.[1]

My solution is as follows: with regard to all of the submitted affidavits, I will consider only those portions containing facts based on the affiant's personal knowledge. All legal arguments, arguments based on facts and statements outside the respective affiant's personal knowledge will be disregarded.

I now turn to the summary judgment motions.

### III. Summary Judgment Motions

#### A. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See also Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir.1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987), *cert. dism'd*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Put differently, "summary judgment may be granted if the movant shows that there exists no genuine issues of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hospital*, 843 F.2d 139, 143 (3d Cir.), *cert. denied*, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson v. Liberty*

---

1. While it is certainly true that plaintiff's submissions violate the Federal and Local Rules, one would have expected more from the defendants, who obviously understand the rules well enough to use them as a sword in this litigation.

*Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is material if it influences the outcome under the governing law. *Id.* at 248, 106 S.Ct. at 2510.

■■■ Within the framework set out above, the moving party essentially bears two burdens: First, there is the burden of production, of making a prima facie showing that it is entitled to summary judgment. This may be done either by demonstrating there is no genuine issue of fact and that as a matter of law, the moving party must prevail or by demonstrating the nonmoving party has not shown facts relating to an essential element of the issue for which it bears the burden. Once either showing is made, this burden shifts to the nonmoving party who must demonstrate facts supporting each element for which it bears the burden as well as establish the existence of genuine issues of material fact. Second, there is the burden of persuasion. This burden is a stringent one which always remains with the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 330–33, 106 S.Ct. 2548, 2556–58, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–61, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970); Advisory Committee's Notes on Fed. Rule of Civ.Pro. 56(e), 1963 Amendment; see generally C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (2d ed. 1983).

### B. Plaintiff's musical composition copyright claim

■■■ The federal aspects of this case are governed by the Federal Copyright Act of 1976. Section 106 of the Copyright Act provides that:

> Subject to sections 107 through 118, the owner of copyright under this title has exclusive rights to do and authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer or ownership. . . .

To prove copyright infringement, the plaintiff must establish that he or she owns a valid copyright, that the defendants copied a protectible expression, and that the copying is substantial enough to constitute improper appropriation of plaintiff's work. See *Hofmann v. Pressman Toy Corp.,* 790 F.Supp. 498, 505 (D.N.J.1990) (Debevoise, D.J.), *aff'd* 947 F.2d 935 (3d Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1569, 118 L.Ed.2d 214 (1992); see also *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 907 (3d Cir.1975), *cert. denied* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975) ("[t]o establish a copyright infringement, the holder must first prove that the defendant has copied the protected work and, second, that there is a substantial similarity between the two works."); *Ford Motor Company v. Summit Products, Inc.,* 930 F.2d 277, 290 (3d Cir.), *cert. denied* —— U.S. ——, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991) ("[c]opyright infringement is established if the plaintiff proves that it owned the copyrighted material and that the copyrighted material was copied by the defendant.") [2]

---

**2.** There is some question as to the actual standard in the Third Circuit to prove copyright infringement.

In an *oft-cited* case decided in 1975, the Court of Appeals held that "[t]o establish copyright infringement, the holder must first prove that the defendant has copied the protected work and, second, that there is a substantial similarity between the two works." *Universal Athletic Sales Co. v. Salkeld,* supra. Thus, the Court stated, "it must be shown that copying went so far as to constitute improper appropriation, the test being the response of the ordinary lay person." *Id.* at 907 (citing, *inter alia,* Nimmer on Copyright § 143.53 (1973 ed.)). Thus, this case seems to

hold, in line with the overwhelming weight of authority, that even when copying is established, the plaintiff must further demonstrate that the copying rose to the level of an unlawful infringement.

A more recent case, however, appears on its face to stray from the reasoning in *Universal.* In that case, the Third Circuit stated, without qualification, that "[c]opyright infringement is established if the plaintiff proves that it own the copyrighted material and that the copyrighted material was copied by the defendant." *Ford Motor Company v. Summit Motor Products, Inc.,* supra. Judge Cowan further wrote that "[b]ecause direct evidence of copying is rarely available, it may be inferentially proven by 'showing

A plaintiff may establish a prima facie case that he or she owns the relevant copyright by presenting a certificate of registration by the United States Copyright Office. *Ford Motor Company* at 291. In this case, plaintiff has produced such a certificate and it is undisputed that he owns the copyright of the musical composition.

The second question, then, is whether defendant has copied the plaintiff's work without authorization. Normally, a defendant denies copying the plaintiff's work or contends that there was authorization. In such circumstances, where direct evidence of copying is unavailable, copying can still be proved "inferentially by showing that the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." *Whelan Associates v. Jaslow Dental Laboratory*, 797 F.2d 1222, 1232 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987). The instant case is one of those rare cases in which such indirect proof is not necessary. In this case, the defendants actually took a sample of plaintiff's recording and incorporated into their recordings. Indeed, they admit as much and admit that it was without authorization. Generally—assuming that illegal appropriation is shown—"[i]f a defendant admits to using copyrighted material, that alone would make the defendant liable for copyright infringement, absent the owner's authorization." *Major League Baseball Promotion v. Colour–Tex*, 729 F.Supp. 1035, 1039 (D.N.J.1990) (Gerry, C.J.). (citing *Fitzgerald Publishing Company v. Baylor Publishing Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986)).

Thus, in this case, there clearly was a copying. See *Nimmer on Copyright*, § 13:03 at 13–2

The final question is whether the copying amounted to an unlawful appropriation.

This is a case of what Professor Nimmer has termed "fragmented literal similarity", see *Nimmer on Copyright*, § 13.03[A][2] at 13–46, that is, there is literal verbatim similarity between plaintiff's and defendants' works. In fact, the copied parts could not be more similar—they were digitally copied from plaintiff's recording. Two parts from plaintiff's song were copied: First, the bridge section, which contains the words "ooh ... move ... free your body", was taken. Second, a distinctive keyboard riff, which functions as both a rhythm and melody, included in the last several minutes of plaintiff's song, were also sampled and incorporated into defendants' work.[3]

that the defendant had access to the allegedly infringed work, that the allegedly infringing work is substantially similar to the copyrighted work, and of course, that one of the rights guaranteed to copyright owners by 17 U.S.C. § 106 is implicated by the defendant's actions." In this case, the Third Circuit seems to be saying that the substantial similarity test only applies when there is no direct evidence of copying, but that once direct evidence of copying exists, liability is established.

For a number of reasons, though, I read *Ford Motor Company* as implicitly containing a requirement that as a prerequisite to infringement, the copying rise to a certain level. In his treatise on copyright, Professor Nimmer notes that while courts sometimes state that substantial similarity is used to prove copying, in fact, the test is to be used only after copying has been established, to show that *"enough* copying has taken place." *Nimmer on Copyright*, 13.03[A] at 13–27 and n. 3.2 (quoting Latman, *"Probative Similarity" as Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement*, 90 Colum.L.Rev. 1187, 1190 (1990) (emphasis in original). Thus, the law is generally well settled that the simple fact of a copying is not enough to prove an improper appropriation. This settled principle—enunciated by the Third Circuit in *Universal Athletic*—prevents the anomalous situation of a defendant being held liable for even the slightest bit of copying of a copyrighted work.

Moreover, the holding in *Universal Athletic* is clear, is in conformance with generally settled law, and was cited approvingly in *Ford Motor Company* for another proposition. It would be out of keeping with traditional concepts of *stare decisis* for the Third Circuit to overrule it in so off-hand a manner.

While I read *Ford Motor Company* in this manner, this interpretation is by no means self-evident, and it is respectfully requested that the Third Circuit clarify the standard for copyright infringement. This is particularly important because cases of digital sampling—where copying is admitted at the outset—are becoming more and more prevalent.

**3.** Mr. Clivilles' affidavit states that "the keyboard riff that we took is used as mere background lasting for only a few seconds toward the end of plaintiff's recording." This statement is so untrue that I must question how defendant's coun-

As courts and commentators have repeatedly noted, the test for substantial similarity is difficult to define and vague to apply, see *Nimmer*, § 13.03[A] at 13–27 (citing cases); *Universal Athletic* at 907 ("most cases are decided on an *ad hoc* basis"); *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960) ("[t]he test for infringement of a copyright is of necessity vague"). Nonetheless, it is repeatedly said that the test to determine substantial similarity is the response of the ordinary lay person. *Universal Athletic* at 907 (citing *Arnstein v. Porter*, 154 F.2d 464 (2d Cir.1946)).

Defendants build on the premise of the lay audience test by arguing that only if the two songs are similar in their entirety should the defendant's song be held to have infringed plaintiff's song. Indeed, defendants cite apparent authority for this proposition. In a case decided a half-century ago, a court, in rejecting the plaintiff's argument of infringement, stated that "I have heard the compositions played, and to my ear there is a similarity, but not such a similarity as would impress one. In other words, *I would not take the one for the other.*" *Allen v. Walt Disney Productions, Ltd.*, 41 F.Supp. 134, 140 (S.D.N.Y.1941) (emphasis added). Similarly, the district judge in *Arnstein v. BMI, Inc.*, 46 F.Supp. 379 (S.D.N.Y.1942) wrote that "[i]nfringement must be founded upon more than the adoption of a few measures here and there. The theme and general melody must be substantially lifted." *Id.* at 381. Moreover, the defendants cite an influential article by Jeffrey Sherman:

> A defendant should not be held liable for infringement unless he copied a substantial portion of the complaining work and there exists the sort of aural similarity between the two works that a lay audience would detect. As to the first requirement, the portion copied may be either qualitatively or quantitatively substantial. As to the second, the two pieces must be similar enough to sound similar to a lay audience, since only then is it reasonable to suppose that the performance or publication of the

accused work could in any injure the rights of the plaintiff composer.

J. Sherman, *Musical Copyright Infringement: The Requirement of Substantial Similarity*, Common Law Symposium, No. 92, ASCAP, p. 145 (1977).

However, defendants misconstrue the scope of the examination, at least in the context of fragmented literal similarity, where there unquestionably is copying, albeit of only a portion of plaintiff's song. If it really were true that for infringement to follow a listener must have to confuse one work for the other, a work could be immune from infringement so long as the infringing work reaches a substantially different audience than the infringed work. In such a situation, a rap song, for instance, could never be held to have infringed an easy listening song or a pop song. See, e.g. *Grand Upright Music, Ltd. v. Warner Brothers Records, Inc.*, 780 F.Supp. 182 (S.D.N.Y.1991) (discussed *infra*) (finding that rap song infringed easy listening song).

Moreover, defendants' test, applied in cases of fragmented literal similarity, would eviscerate the qualitative/quantitative analysis, which revolves around the premise that a party may be held liable when he or she appropriates a large section or a qualitatively important section of plaintiff's work, see *Werlin v. Readers Digest Association*, 528 F.Supp. 451, 463 (S.D.N.Y.1981) (Ward, D.J.).

Finally, such a strict test would seem to go counter to another general principle—that the relevant question in copyright infringement cases is whether the segment in question constituted a substantial portion of the plaintiff's work, not whether it constituted a substantial portion of the defendant's work. See *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982) ("the test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protec-

---

sel could have allowed this statement to be submitted to the court in a sworn affidavit. The keyboard riff is played over and over again for

several minutes on plaintiff's recording, and is obviously used for melodic and rhythmic as well as background purposes.

tible expression by taking material of substance and value").

Thus, ·infringement based on fragmented literal similarity depends on the truth of the principle that "the value of a work may be substantially diminished even when only a part of it is copied, if the part that is copied is of great qualitative importance to the work as a whole." *Werlin* at 463.

■ A recent fragmented literal similarity case decided by Judge Duffy in the Southern District of New York illustrates the point. In that case, the court faced an issue similar to the one before this court today. A rap artist had digitally sampled a portion of a twenty-year old pop song, "Alone Again (Naturally)" and used it as background throughout the rap song, "Alone Again". The appropriated portion consisted of a short keyboard riff in the introduction of the original song. *The two songs were utterly unlike and reached completely different markets. Certainly nobody would have confused the songs. Few would have bought the rap song because it contained a portion of the original song.* Nonetheless, Judge Duffy found infringement. *Grand Upright Music Ltd. v. Warner Brothers Records, Inc.,* 780 F.Supp. 182 (S.D.N.Y.1991) (Duffy, D.J.). The reason lies in the nature of holding defendants liable on a theory of fragmented literal similarity. The proper question to ask is whether the defendant appropriated, either quantitatively or qualitatively, "constituent elements of the work that are original", see *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) such that the copying rises to the level of an unlawful appropriation. As noted above, the question is whether the value of the original work is substantially diminished by the copying. See *Werlin* at 463.

I now turn to. the songs at issue in this case.

■ Plaintiff's song begins with a rhythm and melody utterly unlike defendants' songs. But halfway through the song, the tone changes as the verse-chorus repetition se-gues into a lengthy bridge. The bridge begins with a series of "oohs", sung over a distinctive rhythm, changes into a series of "moves" and then culminates with vocal repetitions of the phrase "free your body." A couple of minutes later in plaintiff's song, the tone again changes. This time, the song segues into a distinctive keyboard riff (musical phrase), that functions as both rhythm and melody, and for some time stays in the foreground of the song. It remains throughout the end of the song, as lyrics are sung over it.

Nonetheless, defendants argue that the vocal portions of plaintiff's song which defendants copied were non-copyrightable and therefore those portions must be factored out prior to performing the substantial similarity test.

■ Since it is not unlawful to copy non-copyrightable portions of a plaintiff's work, non-copyrightable elements must be factored out in an inquiry into infringement. See *Warner Brothers v. American Broadcasting Companies,* 720 F.2d 231, 240 (2d Cir.1983) ("a court may determine non-infringement as a matter of law on a motion for summary judgment ... [when] the similarity between two works concerns only non-copyrightable elements of the plaintiff's work...."). The policy behind the rule is to prevent a deterring effect on the creation of new works because of authors' fears of copying innocuous segments. *Warner Brothers* at 240.[4]

■ There is no easily codified standard to govern whether the plaintiff's material is sufficiently original and/or novel to· be copyrightable. "Cliched language, phrases and expressions conveying an idea that is typically expressed in a limited number of stereotypic fashions, are not subject to copyright protection." *Perma Greetings* 598 F.Supp. at 448. Easily arrived at phrases and chord progressions are usually non copyrightable, see William F. Patry, *Latman's The Copyright Law* 65 (6th Edition 1987). Thus, in one case, a court held that defendant's appropriation of the phrase "night and noon", in a

---

4. The common phrasing of the related principle is that only expressions of ideas are protected; ideas themselves are not. See *Ring v. Estee Lauder, Inc.,* 874 F.2d 109, 110 (2d Cir.1989); *Perma Greetings, Inc.· v. Russ Berrie & Co., Inc.* 598 F.Supp. 445 (E.D.Mo.1984).

song entirely different from plaintiff's song, was not copyright infringement. *O'Brien v. Chappel & Co.*, 159 F.Supp. 58, 58 (S.D.N.Y. 1958) (Dawson, D.J.). In another case, a court held that when plaintiff's and defendant's mug coasters referenced ideas of enjoyment, a drinking mug, friendship, sunshine, and flowers, the plaintiff's ideas were unprotected.

However, if a piece is sufficiently distinctive, it is copyrightable.

■ This case bears no relationship to the cases cited above. It is unfair to characterize the "oohs", "moves" and "free your body" as cliched phrases typical in the field. To the contrary, they are used together in a particular arrangement and in the context of a particular melody. And the *precise* relationship of the phrases *vis a vis* each other was copied. There is no question that the combined phrase "ooh ooh ooh ooh ... move ... free your body" is an expression of an idea that was copyrightable. Moreover, the keyboard line that was copied represents a distinctive melody/rhythm that sets it far apart from the ordinary cliched phrases held not copyrightable. It, too, is an expression of an idea, and is capable of being infringed. Again, the fact that defendants appropriated the exact arrangement of plaintiff's composition says more than what can be captured in abstract legal analysis.

It is certainly not clear as a matter of law that the portions copied from plaintiff's song were insignificant to plaintiff's song. To the contrary, the "oohs" and "move, free your body" occur in a bridge that attempts to be distinct and attention-grabbing. The keyboard riff begins the final portion of plaintiff's song, setting the rhythm as well as the melody.

Therefore, because resolution of this question involves factfinding, I will deny defendant's motion for summary judgment as to liability on plaintiff's musical composition copyright claim.

## C. Plaintiff's sound recording claim

■ Defendants move for summary judgment on plaintiff's sound recording claim. Under the Copyright Act, there is a well-established distinction between sound recordings and musical compositions, see *Patry* at 209. The Copyright Act defines sound recordings as:

> works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords in which they are embodied.

17 U.S.C. § 101. Pursuant to this distinction, "the rights of a copyright in a sound recording do not extend to the song itself", see *T.B. Harms Co. v. Jem Records, Inc.*, 655 F.Supp. 1575, 1577 n. 1 (D.N.J.1987) (Bissell, D.J.), and *vice versa.*

■ As noted above, in order to state a claim of copyright infringement, the plaintiff must first establish that he or she is the owner of the copyright. A certificate of copyright registration is prima facie evidence of copyright ownership. In this case, the certificate of registration states that Prelude Records, Inc. is the author and owner of the sound recording. Plaintiff responds by accusing Prelude Records of fraud. However, "[c]opyright protection for a sound recording of musical compositions must be denied if the copyright claimant of the sound recording has not lawfully obtained the rights to utilize the musical compositions in the sound recordings" *Pamfiloff v. Giant Records, Inc.*, 794 F.Supp. 933, 938 (N.D.Cal.1992) (Peckham, D.J.). In this case, though, plaintiff does not appear to contest that Prelude Records lawfully used the sound recording. Plaintiff only seems to argue that he was promised royalties from the sound recording, and that Prelude did not have permission to copyright the sound recording. But a reading of Mr. Jarvis's deposition testimony reveals only that he is not clear what the situation is with the sound recording.

At any rate, defendants are correct in noting that plaintiff has not obtained testimony from officials of Prelude Records, or copies of alleged contracts detailing an alleged agreement between plaintiff and Prelude Records.

Thus, there is nothing in the record to disprove defendant's *prima facie* showing of ownership of the copyright in the sound recording.

Thus, I must grant summary judgment on this claim. The question of how this relates to the apportionment of damages will be discussed below.

### D. Damages Claim

Next, defendants move for partial summary judgment dismissing plaintiff's damages claims. The copyright act provides recovery for either actual damages plus defendant's profits or statutory damages, at the plaintiff's election. Defendants contend that Mr. Jarvis has elected a recovery of actual damages. However, the act clearly allows a plaintiff to elect up to and until the time of judgment. Thus, I cannot agree with defendant's contention that plaintiff has conclusively elected his damages.

Nonetheless, since summary judgment disposing of damages claims is appropriate if there are no disputed facts and defendant is entitled to judgment as a matter of law, see *McGlinchy v. Shell Chemical Company*, 845 F.2d 802, 808–09 (9th Cir.1988), I will address defendants' motion regarding plaintiff's claim of actual damages and defendants' profits.

In this case, plaintiff claims the following damages: (1) the amount he would have made had he re-released his version of "The Music's Got Me;" (2) defendants' income derived from every performance of their infringing compositions, including a percentage of the defendants' advance; (3) a projected profit amount that defendants' copies would have earned had they remained on the market for a 3–year period, projected from the initial sales period; (4) punitive damages.

I will first assess actual damages and then address lost profits.

#### 1. Actual Damages

 Actual damages is measured by the "extent to which the market value of the copyrighted work at the time of infringement has been injured or destroyed by such infringement." *Nimmer* at 14–8. Because market value of the composition is difficult to quantify, damages are often defined to equal the profits which plaintiff would have accrued but for the defendant's infringement. *Big Seven Music Corporation v. Lennon*, 554 F.2d 504 (2d Cir.1977). It is the plaintiff's burden to establish "the existence of a causal connection between the infringement of the defendant and some loss of anticipated revenue." *Key West Hand Print Fabrics, Inc. v. Serbin, Inc.*, 269 F.Supp. 605, 613 (S.D.Fla. 1965). If plaintiff fails to meet this burden, damages may be denied as too speculative as a matter of law, *see, e.g. Morgan Creek Productions, Inc. v. Capital Cities/ABC Inc.*, 22 U.S.P.Q.2d 1881, 1893, 1991 WL 352619 (C.D.Cal.1991) (Lew, D.J.) (disposing as too speculative plaintiff's lost opportunity claim); see also *Nimmer* at 14–11.

 In this case, plaintiff has utterly failed to meet his burden in showing damages. In his deposition, plaintiff stated that he has been damaged by $15 million. He further stated that "it's not excessive, any kind of money. It's just I have been damaged. What it's worth, that's up to the courts to decide, what it's worth or, you know." While knowledge of the intricacies of the law cannot be imputed to a lay plaintiff, the entire deposition of Mr. Jarvis conveys an air of unfamiliarity and unconcern with any notion of actual, quantifiable damages. For instance, the deposition reveals that after the initial Prelude release of plaintiff's song, there were two re-releases. It appears, though, that plaintiff made no attempt to take discovery or subpoena records on the sales of the re-releases. Plaintiff's testimony that he was attempting to re-mix "The Music's Got Me" when the infringement occurred and that he therefore missed opportunities for advancement, consists of the following:

Q: Did you have any discussions with anybody about a rerelease of "The Music Got Me"?

A: No, because I planned on remixing it myself and rereleasing it. I have the multi-track and I was actually working on remix.

Q: When was this?

A: This was—when did we start that? I can't remember. Somewhere, it was, had to be like the winter, somewhere around January, I forget. I really can't say a month, but we were actually in the studio . . . remixing it.

Q: Which year was this?

A: This was '90

Q: Had you—

A: It had been thought about anyway. We had been thinking about it for a long time. We just decided to start to do it.

Q: When did you start to think about remixing it?

A: Since '86, '87, thinking about it.

Q: Did you have any discussions about what impact the [rerelease] would have, if any, on the market for a remix? . . . .

A: No, not really. . . .

Q: Have you had any discussions about [the infringing song's influence on the market for a re-release of "The Music Got Me"] with anybody in the business?

A: About what?

Q: About whether or not the release of "Get Dumb For [sic] Your Body" has had any impact on your ability to release a remix of "The Music Got Me."

A: No, I haven't really discussed it.

In short, there is simply no evidence to support plaintiff's lost opportunities claim.

Thus, plaintiff has demonstrated no actual damages.[5]

Still, the plaintiff would be entitled to defendants' profits.

### 2. Defendants' profits

 Under the Copyright Act, a plaintiff is further entitled to receive defendant's profits that were the result of the infringement. To establish profits, plaintiff is only required to present evidence of the defendants' gross profits. The parties have stipulated to the following gross profits, arising out of the various infringing songs.[6]:

(i) "Get Dumb" as included on Seduction/Heartbeat record: $270,451

(ii) "Get Dumb (Free Your Body)": $77,815

(iii) "Get Dumb": $14,269

Out of this amount, defendants are entitled to deduct expenses, provided that they establish that the expenses relate to the infringing work. *Allen–Myland v. International Business Machines,* 770 F.Supp. 1014 (E.D.Pa. 1991). Defendants may, for example, deduct manufacturing costs and packaging costs. *Dolori Fabrics, Inc. v. Limited, Inc.,* 662 F.Supp. 1347, 1356, 1357 (S.D.N.Y.1987) (Lumbard, C.J.). Even overhead may be deducted, provided that the defendant's violation of plaintiff's copyright was not willful, see *Allen–Myland* at 1025. However, if defendant's conduct is willful, overhead may not be deducted. Moreover, charge-backs, or returned copies of sold records, are not deductible. See *Nimmer* at 14–30; *Dolori Fabrics* at 1356.

 Defendant has submitted an affidavit from Milton E. Olin, Jr., Senior Vice President of Business and Legal Affairs for defendant A & M Records. He appears competent to testify about the expenses incurred in connection with the releases of the allegedly infringing songs, and has attached a schedule of deductions, submittable as a summary of voluminous records pursuant to Fed.R.Evid. 1006. Plaintiff has not disputed any of the figures.

---

**5.** Defendants properly raise the question of what law should apply if plaintiff proved a copyright violation yet could not prove actual damages. The Seventh Circuit has held that actual damages could nevertheless be awarded on an implied license theory—that is, the plaintiff could be awarded the amount constituting the value to defendants of plaintiffs' work, see *Deltak, Inc. v. Advanced Systems, Inc.,* 767 F.2d 357 (7th Cir. 1985). Defendants naturally argue that this law should not apply, and cite *Business Trends Analysts, Inc. v. Freedonia Group, Inc.,* 887 F.2d 399 (2d Cir.1989), which criticizes *Deltak.* Because

in this case, if plaintiff prevails on his liability claim he will be awarded money if he shows that defendants made a profit, I need not address this question at this time.

**6.** To the extent that plaintiff seeks profits from defendants' performances of plaintiff's song, or a share of defendants' lifetime profits, these claims must be denied as too speculative. Again, there is simply nothing in the record to substantiate these damages.

The following figures are clearly deductible as a matter of law:

(1) sales discounts, referring to various trade discounts given to vendors to provide incentive to stock A & M records;

(2) distribution fees, referring to the monthly charge assessed on A & M for distributing and warehousing A & M products;

(3) manufacturing, packaging and artwork costs;

(4) recording costs;

(5) promotion and marketing costs spent to advertise and promote the recordings.

The following expenses are not clearly allowable as a matter of law, and thus cannot be awarded to defendants on a summary judgment motion:

(1) records sold and then returned, see *Dolori,* supra;

(2) artist and mechanical royalties. While royalties may be generally deductible, see *Smith v. Little, Brown & Company,* 273 F.Supp. 870, 874 (S.D.N.Y.1967 (McLean, D.J.), when the royalties go to an infringer, such royalties are claimable against the infringer. *Id.* at 874. The normal procedure in such circumstances is to allow the infringer to deduct the royalties and to let the plaintiff sue the receiver of the royalties in a separate action. In this case, though, where the artists and the record companies are defendants in one action, it does not make sense to deduct the royalties, particularly when defendants have not sufficiently proven which royalties refer to monies paid to those who allegedly infringed plaintiff's work and which monies went to innocent parties. All in all, then, I cannot deduct these monies as a matter of law.

(3) Polygram Service Charge. This charge refers to a monthly institutional assessment on A & M's Polygram affiliate in the Netherlands. Since the records are released only in the United States, defendants have not sufficiently proven that this expense is related to the infringing works.

(4) Overhead. While overhead is deductible if the defendants did not act willfully, it is a question of fact whether these defendants did in fact act willfully. See *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.,* 658 F.Supp. 458, 464 (E.D.Pa.1987) (in computation of statutory damages, willfulness requires plaintiff to show that "infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyrights."); see also *Allen–Myland* at 1026 (case law on statutory damages informs analysis of willfulness in actual damages context).

First, there can be no more brazen stealing of music than digital sampling, and defendants Cole and Clivilles did sample a fair portion of plaintiff's work. This raises a question of whether—even if they did not actually know that they were engaging in copyright infringement—they acted in reckless disregard for whether their actions violated plaintiff's rights. Second, the record companies in all probability were aware of the inclusion of the brazen copying in the defendants' compositions. Third, Mr. Clivilles' affidavit and the deposition of Mr. Jarvis provide evidence that Mr. Clivilles and Mr. Coles acted in complete disregard for plaintiff's rights. Any finding in this regard involves a credibility determination not allowable on summary judgment.

Thus, I am unable to rule as a matter of law on this summary judgment motion that defendants are entitled to overhead expenses.

Thus, when calculating the defendants' profits deducting only those expenses clearly allowable as a matter of law, there is a profit—a total of $95,872.

Of course, the inquiry at this point is not complete. The amount of profits must then be apportioned so that plaintiff receives only those profits clearly related to the infringing work.

The Copyright Act provides that the defendants are entitled to prove that certain elements of the profits are "attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). The infringer bears the burden of proving the existence of these other elements. The method of apportionment must be fair in that it must clearly take into account the value to the infringer of the

plaintiff's work and should only compensate the plaintiff for profits due to the infringement.

■ Defendants propose the following formula for apportionment: As to the version appearing on the Heartbeat single, the profits were reduced 50% because at least half of the profits were due to the rap section. Defendants then argue that since only 12% of defendant's song contains plaintiff's material, the 88% of the remaining profits should be deducted. Further, defendants state that since there are three other songs · on the record, only ¼ of the remaining profits are attributable to the infringing elements. Finally, defendants contend that the remaining profits must again be halved because plaintiff does not own the copyright of the sound recording, and since the sound recording and the copyrighted musical composition are identical, profits must be apportioned accordingly.

I do not believe that defendant's method is fair. First, they present no objective evidence supporting their method (for instance, evidence demonstrating that at least half of the records were sold in areas where the rap market is strong). Second, without more evidence, it is unfair to attribute profits on a second by second basis, that is, that simply because plaintiff's song comprises 12% of defendant's song plaintiff is only entitled to 12% of the profits. Third, it is unclear why the 12% attributable to plaintiff's recording is not taken off the original profits rather than off the original profits deducted by fifty percent to take the rap section of the song into account.

Of course, defendant is free to present at trial a different method of apportionment that more properly takes into account the relevant criteria.

At any rate, since the damages do not amount to nothing, I will deny defendants' summary judgment motion on damages.

### E. Motion re: defendant Seduction

■ Defendants next argue that summary judgment should be granted as to the claims against defendant Seduction, because Seduction had no involvement in the alleged infringement. Indeed, the undisputed evidence indicates that Seduction's involvement in this case is simply because the group performed versions of another song, released in the same single as the allegedly infringing song.

■ An individual may be held liable for copyright infringement when he or she "has the ability to supervise infringing activity *and* has a financial interest in that activity, or who personally participates in that activity." *Southern Bell Telegraph and Telephone v. Associated Telephone Directory*, 756 F.2d 801, 811 (11th Cir.1985) (quoting *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 517 F.Supp. 900, 904 (S.D.N.Y.1981)).

Because the undisputed evidence indicates that Seduction did not participate in the infringing activity, and had no supervisory powers over the infringing activity, the group must be dismissed from this action.

### F. State law claims

Next, defendants move for summary judgment dismissing Mr. Jarvis's state law claims. They make a number of arguments in this regard.

First, defendants argue that they were not put on notice of the state law claims, in that the state law claims are not mentioned in the complaint. However, leave to amend a complaint should be granted freely, and in an order dated November 24, 1992, Magistrate Judge Chesler ordered that the final pretrial order in this case be amended to include plaintiff's amendments to the pretrial order. Because these amendments stated with some specificity the state law claims, I will treat them as amendments to the complaint.

Next, defendants argue that the state common law claims are preempted by the federal copyright act.

■ Section 301 of the copyright act explicitly preempts state laws that (1) fall within the subject matter of the federal copyright law and protect works that are fixed in tangible medium of expression; and (2) create "legal or equitable that are equivalent to any of the exclusive rights granted to the copyright holder and specified in Section 106."

See *SBK Catalogue Partnership v. Orion Pictures Corp.*, 723 F.Supp. 1053, 1066 (D.N.J.1989) (citing *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir.1987)).[7] It is settled law that a right is equivalent to copyright if it is infringed by the mere act of reproduction, performance, distribution or display, see *Allied Artists Pictures Corp. v. Rhodes*, 496 F.Supp. 408 (S.D.Ohio 1980), *aff'd* 679 F.2d 656 (6th Cir.1982) Professor Nimmer has succinctly stated the scope of preemption under the Copyright Act:

> [I]f under state law the act of reproduction, performance, distribution or display, no matter whether the law includes all such acts or only some, will in itself infringe the state-created right, then such right is preempted. But if qualitatively [different] other elements are required, instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption.

Nimmer at 1–14 to 1–15. See also *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ("When a right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights, the state law in question must be deemed preempted.")

Against this background, I turn to plaintiff's state law claims.

First, plaintiff contends that "the common law of the State of New Jersey addressing misappropriation protects the performance value of the plaintiff's composition." He argues that this is not preempted because the common law protects against radio and live, and other manner of unfixed performances of the plaintiff's composition done without his permission." It is true that the federal copyright statute expressly withheld preemption form works "not fixed in any tangible medium of expression." However, the plaintiff's work in this case—the basis for the copyright—is in fact a fixed musical composition with a copyrighted arrangement also fixed in a sound recording. There is absolutely nothing in the record to indicate that defendants infringed upon *plaintiff's* radio and live performances. In fact, defendants digitally sampled the fixed composition. Thus, this claim is preempted by federal law.

Second, Mr. Jarvis contends that defendants violated his right to privacy, right to publicity, and right against unfair competition, by intentionally exploiting his reputation, unique sound and identity, and goodwill by copying his material. I turn to these claims now.

The Copyright Act does not preempt claims based on the appropriation of unfixed, non-copyrightable items such as a plaintiff's voice or likeness. *Midler v. Ford Motor Company*, 849 F.2d 460, 462 (9th Cir. 1988), *cert. denied* —— U.S. ——, 112 S.Ct. 1513, 117 L.Ed.2d 650 (1992). Moreover, New Jersey law provides that the misappropriation of a person's name or likeness to "enhance the sale of an article." *Palmer v. Schonhorn Enterprises, Inc.*, 96 N.J.Super. 72, 75, 232 A.2d 458 (Chancery Division 1967). The right of publicity generally applies to situations where the plaintiff's name, reputation or accomplishments are highly

---

**7.** Section 301 states, in pertinent part, as follows:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights, remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or....

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301.

publicized and the defendant used that fact to his or her advantage.[8]

█ In this case, defendants essentially make two arguments for why these state law claims must be dismissed. First, they argue that the claims as defined by Mr. Jarvis are nevertheless preempted by the Copyright Act, since his claims are based on the misappropriation of a fixed composition. Second, they argue that New York law applies to the right of publicity and privacy claims, and that under New York law, the claims must be dismissed. It is unnecessary for me to reach these issues, because at any rate, plaintiff's profferings fall far short of presenting a cognizable claim, under even the most liberal interpretation of the most sympathetic applicable law.

Plaintiff's argument consists of conclusory statements in a legal brief that draws the court's attention to uncited deposition testimony. It is unclear just what deposition testimony is being referred to, but a careful reading of the transcripts of depositions plaintiff submitted to the court present the following possibly relevant passages in the deposition of Boyd Jarvis:

Q: Which has been the most successful record in terms of sales?

A: The Music Got Me and Nobody's Business.

Q: What were the sales of The Music Got Me?

A: I'm not really sure....

Q: Well, do you have any records, when I say records, papers, not vinyl, records of the sales of any of these records?

A: Not really. No, not really.

Q: Did you ever have?

A: Not too much records on it, no. Most of our money was made from shows and we really didn't receive too many royalties

on the record either, which is another matter that—

Ms. Beckett [plaintiff's counsel]: So we don't know what the sales are and we don't know what the most successful songs were on the discography.

A: What I do know, everybody had a copy, all the deejays, it's a very popular record.

Q: Of the Music Got Me?

A: Yes. Very popular record. We did many, many, many shows.

Q: Did you ever have any communications with Prelude Records in which you sought to get information of the ... sales of The Music Got Me?

A: Yes, I have some documentation, you know, of just, you know, check stubs and things, advances that they made.

Another portion of the submitted deposition refers to the first time plaintiff heard the defendants' version of the song in question:

Q: When was the first time you ever heard the selection "Free Your Body," ...

A: I was at a club called the Cheetah in New Jersey ... And the record came on and I thought it was my record. I immediately told my friends, I said they are playing the cut, playing our record. We went in, we started dancing. Then all of a sudden I heard the orchestra hits come in and I said what's that, and I looked up at the DJ's booth. I didn't see any DJ behind the turntable, and I went up there and he told me that it was on Seduction, you know, it was Cole and Clivilles....

None of these submissions come even close to supporting plaintiff's claim that the defendants infringement was intended to appropriate plaintiff's popularity and unique sound and identity. All the above shows is that

---

**8.** *Palmer,* supra, cites the following instances where the right of privacy was held to have been infringed: *Lane v. F.W. Woolworth Co.,* 171 Misc. 66, 11 N.Y.S.2d 199 (S.Ct.1939), *aff'd* 256 App. Div. 1065, 12 N.Y.S.2d 352 (App.Div.1939) (defendant sold lockets with removable photographs of plaintiff in each one); *Jansen v. Hilo Packing Co.,* 202 Misc. 900, 118 N.Y.S.2d 162 (S.Ct. 1952), *aff'd* 282 App.Div. 935, 125 N.Y.S.2d 648 (1952) (defendant inserted pictures of widely

known baseball players in popcorn and chewing gum containers); *Selsman v. Universal Photo Books, Inc.,* 18 A.D.2d 151, 238 N.Y.S.2d 686 (1963) (defendant inserted a picture of actress using a camera, with an inscription giving her name, in a manual for the camera); *Miller v. Madison Square Garden Corp.,* 176 Misc. 714, 28 N.Y.S.2d 811 (S.Ct.1941) (official program of sporting event contained photographs of contestants and prominent sports personalities).

there is a colorable claim of copyright infringement.

When the plaintiff was specifically asked to define these kinds of damages, the discussion went as follows:

Q: In what way, if any, do you believe that the defendant has increased his marketability?

A: In what way? Well, before he was doing that, he was, you know, before they went—everything you do, I mean, it increases your marketability, to me, you.... [E]verything is a step.....

Q: In your view, Mr. Jarvis, has Mr. Cole or Mr. Clivilles increases his marketability by inuring to himself your reputation?

A: Yes.

Q: In what way?

A: He's used myself, that's all I can say. I don't know what inuring means, because I have never heard the word; that's the first time. But I know he used something of mine to benefit himself without getting permission and without asking me, you know, and without giving me anything for it. It's wrong.

Q: Let's follow that through. Do you feel that—

A: It increased his marketability.

Q: In what way?

A: He used something everybody likes. That increases your marketability, I guess.... Whatever song, I mean, any song that you do, if people like it, then it increases your marketability. If they don't like it, that's a different story. If they like it, then, hey, it can only make it better.

It is abundantly clear from this colloquy that plaintiff himself sees this cause of action as one for copyright infringement, and not for appropriation of his reputation and unique sound. Plaintiff's deposition answers confirm Mr. Clivilles' statement in his affidavit that "The Music's Got Me" was sampled simply because the defendants liked it.

Moreover, none of the other submissions lend even slight support to plaintiff's allegation that his goodwill was infringed upon or that defendants intentionally sought to capitalize upon his unique sound and identity.

For instance, Boyd Jarvis's curriculum vitae states that "Boyd has been cited in magazines such as Billboard, Right On, and Upfront as being 'The creator of House Music as we know it today' and is recognized most widely for his 'innovative style' in music production and creation as well as his vision in music trends." Yet none of these articles were submitted to the court. No affidavit from an expert in the field, detailing Mr. Jarvis' reputation, has been submitted. No deposition of defendants, which support their alleged intention to capitalize on Mr. Jarvis's reputation, has been submitted. Plaintiff's attorney's conclusory statements about what witnesses may say at trial is just not enough to create an issue of material fact. There simply is nothing in the record to support plaintiff's conclusory allegation that defendants gained or could have gained by unlawfully identifying themselves with Mr. Jarvis.

Plaintiff's attorney complains in her brief that defendants' counsel is treating her without respect, possibly, she surmises, because she is a sole practitioner. This court is sympathetic to her position, and hence has been understanding in considering her generally deficient submissions. Nevertheless, these state law claims cannot stand.

## CONCLUSION

Therefore, in light of the above:

Defendants' motion to strike is granted in part and denied in part.

Defendants' summary judgment motion on plaintiff's musical composition copyright claim is denied.

Defendants' motion on plaintiff's sound recording copyright claim is granted.

Defendants' motion for summary judgment on plaintiff's state law claims is granted.

Defendants' motion for summary judgment on damages is denied.

Defendants' motion for summary judgment on the claims against defendant Seduction is granted.