**Harry PALMER and Star's Edge, Inc., Plaintiffs,**

v.

**Eldon BRAUN, Defendant.**

**No. 6:00–cv–1662–Orl–31JGG.**

United States District Court, M.D. Florida, Orlando Division.

July 30, 2001.

Craig Corbett, Fisher, Rushmer, Werrenrath, Orlando, FL, for Harry Palmer.

Penny R. Phillips, Altamonte Springs, FL, for Star's Edge.

John Matthew Merrett, Jackonsville, FL, for Eldon Braun.

## ORDER

PRESNELL, District Judge.

THIS CAUSE comes before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. 25, filed March 9, 2001). After reviewing the verified pleadings, supporting affidavits, and evidence presented at the hearing on this matter, the Court concludes that the motion must be **DENIED.**

## I. BACKGROUND

Plaintiff, Harry Palmer, (Palmer), is the founder and president of Star's Edge, Inc. (Star's Edge). Star's Edge is the corporate entity that promotes and administers the Avatar course, a course intended to instruct students on how to effect positive changes in their lives through the management of their beliefs. (Palmer Aff. at ¶ 4). Defendant, Eldon Braun, (Braun), is a former Avatar course instructor who developed his own "workbook for self-exploration" entitled "The Source Course." (Ex. 37). At the heart of this lawsuit is Plaintiffs' claim that "The Source Course" infringes the Avatar copyright. Before ad-

dressing the legal issues at hand, the Court will first provide a brief background on Palmer and Braun, and the events which led to the instant lawsuit.

Harry Palmer is an educational psychologist who, for many years, was a Scientology instructor in Elmira, New York. After leaving the Church of Scientology in 1986, Palmer "engaged in experimental research to explore the functioning of [his] own consciousness."[1] (Palmer Aff. at ¶ 4). Using his background in education and psychology, together with the insights gained from his research, Palmer developed a series of lesson plans, which eventually became the Avatar course. Since its introduction in 1987, over 50,000 people have taken the Avatar course, and the course materials have been translated from English into 14 other languages and taught in more than 55 countries (*Id.* at ¶ 14).

The basic Avatar course materials are contained in three sections and are taught by trained and licensed instructors called "Masters." Section I is an introductory course taught over a period of two days at a cost of $295.00. This section, which consists of 264 pages of material entitled "Resurfacing: Techniques for Exploring Consciousness," explains the Avatar concept and contains a series of exercises designed to explore the underlying structure of the students' consciousness and beliefs. (Ex. 4).

After completing the introductory course, Avatar students are encouraged to take Sections II and III. These sections, which are taught over a period of six to nine days, cost $2,000.00.[2] Section II, consisting of 39 pages and entitled "The Exercises," teaches about the principles governing creation and experience. (Ex. 35). Section II seeks to "enhance the perception of creation and to restore the ability to create reality," (Ex. 4 at 147), and purports to lead the student to "reconnect with an experiential awareness of [his or her] own existence and to recover the effortless ability to create personal reality." (Ex. 35 at ii). Section III consists of 77 pages and is entitled "The Procedures." This section "explores the foundational beliefs that create the universe and presents a simple and effective technique for managing beliefs." (Ex. 36 at ii).[3]

Sections II and III of the Avatar course materials are confidential. Prior to taking the course, students are required to sign a confidentiality agreement. At the conclusion of the course, students must return the course materials. According to Palmer, the reason for confidentiality is twofold: (1) quality control—Palmer claims the materials cannot be meaningfully understood without the assistance of a trained master;

1. At the evidentiary hearing on this motion, Palmer testified that his "research" included a period of eight weeks of sensory deprivation:

    [I] engaged in a process called sensory deprivation tanking, which was floating in a sealed tank where the sensory input that's coming from the senses of your body are shut off, so that basically you are just consciousness. You are floating in Epsom salts solution that's at the same temperature as your skin, so you can't feel the difference between the water and your skin. The tank is dark. All of the sound is baffled out, so really the only thing in the tank is your consciousness. You don't have any sense of your body. . . .
    (Tr. at 21–22).

2. Star's Edge is a for-profit corporation and makes no apology for its financial success. Its philosophy is that "prosperity and good works belong together." (Ex. 4 at 143).

3. There are two additional sections of the Avatar course. Section IV is the Masters course, and Section V is the Wizards Course, which teaches would-be Wizards the "ability to transform civilization." (Ex. 4 at 147). Only Sections I, II, and III of the basic Avatar course are at issue here.

and (2) economic—confidentiality helps ensure that Avatar will maintain its value to future students. (Tr. at 28–29).

In September 1989, Braun signed a license agreement and became an Avatar Master. (Ex. 7). Braun also executed a "Confidential Materials Security Contract" wherein he agreed to maintain the Avatar course materials in confidence and to return the materials at the request Star's Edge. (Ex. 8). Yet, Braun's tenure as an Avatar Master was short-lived. In 1991, Braun had a falling-out with Palmer, and Star's Edge suspended Braun's Avatar license. As a result, Star's Edge asked Braun to return his Avatar materials. (Ex. 9). When Braun did not return the materials, Star's Edge assumed they had been destroyed pursuant to the Confidentiality Agreement.[4]

For the 10 years following the suspension of his Avatar license, Braun engaged in a persistent campaign to discredit Palmer. This effort is evidenced in the Record by numerous letters, faxes, e-mails and internet postings, (Ex. 10–34), including an exposé entitled "The Wiz of Orlando" (Ex. 11). The Palmer Braun feud escalated in the summer of 2000 when postings on the internet under the name "Free Tars" threatened to publish the confidential Avatar materials.[5] In an internet posting dated August 13, 2000, Braun wrote, "I have a nearly completed manuscript that is an analog of the Avatar course called The Source Course." (Ex. 15).[6] On October 5, 2000, Braun posted another note indicating that he had finished a first draft of The Source Course and acknowledged that his target market would include "Avatar grad-

uates who lack a take-home manual. . . ." (Ex. 21 at 1).

Subsequently, on October 28, 2000, Braun posted another message, stating that "[t]he excuses Star's Edge uses for keeping the materials secret are, in my opinion, utter self-serving bullshit. That's why I am about to end the secrecy." (Ex. 23). On that same day, another posting from "Free Avatar" said that "[t]he Source Course could serve as the 'take home materials' that are missing from the Avatar course." (Ex. 24 at 1). Finally, on November 9, 2000, Braun posted yet another note indicating that The Source Course was now available for purchase. (Ex. 28). Braun sold the course for $25.00 and even offered to provide it for free to persons who could not afford it. (Ex. 24, 32). In the November 9 posting, Braun wrote, "[i]f you've taken the confidential Avatar course, and wished you had received take-home materials, The Source Course can serve as a refresher for further work on your own." (Ex. 28).

As a result of this posting, Star's Edge wrote to Braun on November 20, 2000, claiming that The Source Course infringed its copyright-protected work and demanding that Braun cease and desist from further infringement. (Ex. 30). Palmer and Star's Edge filed this action on December 15, 2000. On March 9, 2001, Plaintiffs moved for a preliminary injunction-almost three months after the complaint was filed. On April 10, 2000, the Court scheduled a hearing on the motion for preliminary injunction for April 26; however, Plaintiffs requested a continuance because "Palmer ha[d] a pre-existing obligation requiring

---

4. Braun claims that he did indeed destroy the materials years ago and, although an excerpt of the Master's notes recently began circulating on the internet, Palmer and Star's Edge do not allege that Braun is responsible for the posting.

5. The threat turned out to be a hoax, and the publication never occurred.

6. Braun began writing The Source Course in 1991, at the same time he wrote "The Wiz of Orlando," and presumably while still in possession of the Avatar materials.

him to be out of the country on the hearing date." (Doc. 33). Further scheduling conflicts of counsel prevented the Court from hearing this matter until June 28, 2000.

By their motion, Plaintiffs seek to preliminarily enjoin Defendant from, among other things, publishing The Source Course or revealing any of the contents of the Avatar materials to any other person. At the June 28 evidentiary hearing, the two protagonists, Palmer and Braun, testified and introduced various exhibits. This matter has been fully briefed and is ripe for determination.

## II. PRELIMINARY INJUNCTION STANDARD

■ Injunctive relief is an extraordinary and drastic remedy. *See United States v. Lambert*, 695 F.2d 536, 539 (11th Cir.1983). As such, "its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Id.* To prevail on a motion for preliminary injunction, a plaintiff must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) plaintiff's injury outweighs the injury to the defendant; and (4) the requested relief would not disserve the public interest. *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627 (11th Cir.1992). In copyright infringement cases, irreparable injury is generally presumed if the plaintiff can demonstrate a substantial likelihood of success on the merits. *CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F.Supp.2d 1333, 1344–45 (S.D.Fla.1998).

■ To carry its burden, a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings. *Bascom Food Products Corp. v. Reese Finer Foods, Inc.*, 715 F.Supp. 616, 624 n. 14 (D.N.J.1989). Moreover, vague or conclusory affidavits are insufficient to satisfy the plaintiff's burden. *See Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575 (Fed.Cir.1990). Furthermore, affidavits based on personal knowledge are accorded more weight than affidavits based upon mere belief or hearsay. *See* 13 *Moore's Federal Practice* § 65.23[2] (3d ed.2000).

## III. APPLICATION

The first issue for this Court's determination is whether Plaintiffs have shown a substantial likelihood of success on the merits of their copyright claim. The elements of a copyright infringement claim are "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). There is apparently no dispute concerning Plaintiffs' ownership of the copyright at issue.[7] Therefore, the Court will focus on whether the Avatar course is an original work of authorship entitled to copyright protection and whether any infringement of that work has occurred.

Originality is the touchstone of copyright protection. *Feist*, 499 U.S. at 345, 111 S.Ct. 1282. As the Supreme Court explained in *Feist*:

> To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works),

---

**7.** At the hearing, Plaintiffs introduced the copyright registration certificates for the Avatar materials. (Ex. 1–3). Production of these certificates raises a rebuttable presumption of originality and copyrightablility of the subject matter and shifts the burden to the Defendant to demonstrate why Plaintiffs' claim of copyright is invalid. *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir.1996).

and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.

*Id.* at 345–46, 111 S.Ct. 1282 (citations omitted).

■ Although the threshold of originality required for copyright protection is low, copyright protection does not extend to all aspects of an author's work. *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1248 (11th Cir.1999). Section 102(b) of the Copyright Act of 1976 provides that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Thus, copyright protection does not extend to the author's idea but only to the author's particular expression of the idea, *i.e.,* the unique style and arrangement of words the author selects to convey the idea. The idea/expression dichotomy is a very elusive concept. As Judge Learned Hand wisely recognized, "[o]bviously, no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.' Decisions must therefore inevitably be ad hoc." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960).

■ Applying this nebulous standard to the instant case, the Court has reviewed all 380 pages of the Avatar course materials, and has compared those pages with The Source Course's 55 page workbook.[8] As a whole, the Avatar materials arguably include original expression entitled to copyright protection. However, in the Court's view, portions of the Avatar materials also contain unoriginal expression which is not subject to copyright. For example, a large portion of Avatar's Section I contains a personality profile form. Braun includes a similar form in The Source Course materials which Plaintiffs characterize as infringement. Yet, anyone pursuing the idea of a personality profile would likely use a similar form to elicit the same basic information. These and other mere exemplification of ideas, procedures, or processes are not original works subject to copyright protection. *See Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879) (finding that accounting form used to record information rather than to explain information was not eligible for copyright protection).

Although Plaintiffs could arguably establish that a portion of its copyrighted Avatar materials contain the minimal level of originality required for copyright protection, the more difficult question is whether Plaintiffs can produce sufficient evidence to prove infringement. To prove infringement, a plaintiff must demonstrate that the defendant actually copied plaintiff's work and that there is a substantial similarity between the defendant's work and the plaintiff's protected work. *Herzog v. Castle Rock Entm't,* 193 F.3d at 1248. "If the plaintiff does not have direct proof of copying, the plaintiff may show copying by demonstrating that the defendant[ ] has access to the copyrighted work and that the works are 'substantially similar.'" *Id.* at 1248. Two works are considered substantially similar when "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 829 (11th Cir.1982).

---

**8.** In order to preserve the confidentiality of Sections II and III, these materials, together with Defendant's Source Course, were filed under seal.

Clearly, The Source Course is not a blatant copy of Avatar. Thus, the issue is whether Defendant's work is substantially similar to Plaintiffs'. At the hearing on this matter, Plaintiffs introduced an exhibit summarizing Defendant's alleged plagiarism. (Ex. 39). In this exhibit, Plaintiffs provide examples of the two works to illustrate that The Source Course follows the same sequence of topics, includes the same procedural steps, and paraphrases the same expressions, explanations, and instructions as Avatar.[9] Of the examples provided, only a handful contain identical expressions. Of the balance, some are similar, while others appear to differ significantly. Although the Court will not detail here every instance where Plaintiffs claim that Defendant has infringed the Avatar materials, several examples of the alleged infringement bear discussion.

Plaintiff directs the Court to Exercise 23 of Avatar Section I, entitled "Transparent Beliefs," (Ex. 4 at 111), and claims that Defendant essentially copied this section on page six of The Source Course. For ease of comparison, the two versions are set forth side-by-side below:

| Avatar | The Source Course |
| --- | --- |
| Transparent Beliefs | Your life and how you create it |
| A belief is transparent when you are operating through the belief without noticing it. Transparent beliefs are seldom helpful and, in fact, can be fatally debilitating. Most are self-sabotaging, adopted in a moment when you were something less than rational. | You've already been asked to write down some personal history and a few observations for future reference. Here are some more questions about your feelings and beliefs. |
| The first impression you have of a transparent belief is that it is unquestionably true. That's just the way life is. That's the way I am. Here's the proof! But then something funny happens: you discover that the proof for holding the belief is actually produced by the belief itself. A pattern begins to unfold. | Note that "beliefs" may also be called facts, opinions, attitudes, emotions or thoughts. Any general statement that can be preceded by the word "because ..." is a belief of one sort or another. The word "should" is often part of a generalized, broadly shared belief. |
| Transparent beliefs are discovered by tricking yourself into expressing them and then stepping back and looking at what you said. Transparent beliefs are often hidden under the desire to be right, so finding transparent beliefs requires a degree of vulnerability. | When you come across a belief or "fact" that seems absolutely true—one that many people would agree describes "the way things are"—you have hit on a transparent belief that may be manufacturing your own reality or a shared reality created within the mass consciousness of your culture or group. Generally accepted beliefs are worth checking out, just in case. |
| (Ex. 4 at 111). | (Ex. 37 at 6). |

A review of these two passages may indeed lead to the conclusion that the same notion —— transparent beliefs —— is being discussed. However, since Plaintiffs can-

9. On cross-examination, Palmer conceded that the examples provided to the Court in exhibit 39 are the only examples of infringement of which he is presently aware.

not copyright the underlying idea or concept referred to as "transparent beliefs" and since Defendant's expression of this idea is not substantially similar to Plaintiffs', this example does not sufficiently demonstrate an infringement so as to warrant injunctive relief.

Another example of infringement, according to Plaintiffs, may be found by comparing Section III of the Avatar materials with page 42 of The Source Course. Section III of the Avatar materials, entitled "Creation Handling Procedure," outlines six steps for grasping the creation handling procedure concept. (Ex. 36 at 1–5). The Source Course expresses a corresponding idea under the heading "TDP, the key process." (Ex. 37 at 42).

Before revealing his own step-by-step process for "dissolving thoughts," Defendant openly acknowledges that this same idea or procedure has been discussed by others, including Avatar:

> What follows is a procedure known as the Tibetan Void Gem. It is a way of dissolving thought forms. It is described in the works of Tarthank Tulku, a Tibetan Buddhist leader, and has been included in many works. It is also related to the Sedona Method. A version called the "Creation Handling Procedure" is taught on the Avatar Course. Here we'll call it the "Thought Dissolving Process," or TDP for short.

(*Id.*)

The TDP process set forth in The Source Course contains eight steps, compared to the six steps of Avatar's Creation Handling Procedure. Plaintiffs claim that the steps outlined in The Source Course are a thinly veiled copy of the steps outlined in Avatar. Step one of each work is reproduced below.

### Avatar

1. Identify with and experience.

Awareness within a creation is consciousness. Every creation contains consciousness and is connected with every other creation through its beginning in awareness. Awareness is without definition; it cannot be described as this or that, existing or not. Only the creations of awareness exist. Consciousness is awareness being limited (defined) by a form or quality.

In the Feel–It Exercises of Section II, you learned to merge with a creation and feel how it feels. This is the essence of "identify with and experience." It requires that you surrender any resistance you might have to existing as the belief, the feeling, the emotion, the idea, the identity, the time, the space, or the mass of whatever you are seeking to identify with and experience. You become the limited expression of consciousness that is being the creation. . . .

(Ex. 36 at 4).

### The Source Course

1. Grok it.

To dissolve a belief, you sense and enter the thought form in order to fully accept and experience it. You may feel you are entering the center of an energy field or moving toward to vortex of the belief or feeling. Just do a little circular breathing, and settle into it. Get the full feeling as intensely as possible, without any opinion or judgment. Enjoy the ride.

(Ex. 37 at 42).

Frankly, after scrutinizing and comparing the steps of Avatar's Creation Handling Procedure with the steps of The Source Course's TDP process, the Court concludes that both passages are virtually incomprehensible. What is clear, however, is that these passages are not so similar that an ordinary observer would likely detect the resemblance.

    ■ Plaintiffs direct the Court to another example of the Defendant's alleged infringement in Section II of the Avatar materials. This portion of the course is entitled, "Creation Exercise # 3—Sourcing Originations." (Ex. 35 at 32). Its stated purpose is "[t]o allow the student to identi-

fy and assume control over any secondary originations that act to curb or modify his/her ability to source origination." (*Id.*). The Avatar procedure for this exercise contains two steps. In contrast, The Source Course uses a nine-step procedure to capture this concept. According to Plaintiffs, Defendant has plagiarized the Avatar materials by simply substituting the terms "affirmations" and "yeah, buts," for the Avatar terms "primary origination" [10] and "secondary origination." [11] (Ex. 37 at 33). Step one of the Avatar passage and step one of the offending Source Course passage are set forth below:

| Avatar | The Source Course |
|---|---|
| Procedure ... | The Procedure: |
| 1. The student voices a statement from the Source List as a primary origination and then discovers any secondary originations that are occurring spontaneously before, during, or after the primary origination. | 1. **State the affirmation as a declaration of truth.** You want the feeling that this is absolutely true, with no reservations. Repeat it until you get a thought that opposes or qualifies the statement; or until you find a reaction like a physical sensation or twitch. There is your first "Yeah, but." |
| (Ex. 35 at 32). (emphasis in original) | (Ex. 37 at 33). (emphasis in original) |

Here, again, although a spiritually enlightened lay observer might possibly conclude that the two authors are discussing the same general concept, the expression of the concept is not the same. Without substantial similarity, there can be no infringement.

Plaintiffs also direct the Court to a single page of The Source Course, (Ex. 37 at 34), which seems to copy, verbatim, 15

short sentences found in Section II of the Avatar materials, (Ex. 35 at 34, 37). Although these sentences have been rearranged and ordered differently, (sequential numbering versus bullets), and the number of sentences varies in each work, (31 versus 34), both works display the sentences in the form of a list and both works use the lists as a tool for students to identify and control their thoughts in order to

---

**10.** Palmer defines primary origination as "a creation or communication invested with sufficient intention and effort to create a reality." (Ex. 35 at 35).

**11.** Palmer defines secondary origination as:

    1. an unintended creation that is triggered by the creation one intends 2. an effort or

intention concerned with how a primary origination is, was, or will be received
3. an effort to monitor or modify the origin point or receipt point of a communication
4. something that is there other than what is knowingly being created
5. an unaligned effort
(*Id.*)

transform their reality. The relevant Avatar sentences are shown below, alongside their counterparts from The Source Course:

| Avatar | The Source Course |
|---|---|
| I have everything I need. | I have what I need. |
| The past doesn't exist. | My past doesn't exist. |
| I create what I experience. | I own what I experience. |
| I am right here. | I am right here. |
| I don't know where I am. | I don't know where I am. |
| I am relaxed. | I am relaxed. |
| Everything I see is illusion. | Everything I see is illusion. |
| What I see is real. | Everything I see is real. |
| My mind is still. | My mind is quiet. |
| I am happy to be me. | I'm happy being who I am. |
| I am not a victim. | I am not a victim. |
| I feel like a victim. | I feel like a victim. |
| I am me. | I am just me. |
| I create it all. | I create everything. |
| I am source. | I'm the source of it all. |
| (Ex. 35 at 34, 37). | (Ex. 37 at 34). |

Any lay person would observe that these sentences, where not identical, are strikingly similar. However, that does not resolve the infringement inquiry. Rather, the question becomes at what point does a defendant who copies a small portion of a copyrighted work, virtually verbatim, cross the line from de minimis duplication to substantial similarity constituting copyright infringement? Although "[n]o easy rule of thumb can be stated as to the quantum of fragmented literal similarity permitted without crossing the line of substantial similarity," the answer turns on both quantitative and qualitative considerations. 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 13.03[A][2] (2001).

Quantitative refers to the amount of the plaintiff's total work that has been reproduced, whereas qualitative refers to the importance of the portion taken to the value of the original work. *Id.* "If so much is taken that the value of the original is sensibly diminished, or the labors of the original author are substantially to an injurious extent appropriated by another, that is sufficient in point of law to constitute a piracy pro tanto." *Folsom v. Marsh*, 9 F. Cas. 342, 348, No. 4901 (C.C.D.Mass.1841) (Story, J.). This standard, like so many others in copyright law, is far from clear and thus presents the "classic jury question." *Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.*, 503 F.Supp.

1137, 1145 (S.D.N.Y.1980), *aff'd,* 672 F.2d 1095 (2d Cir.1982), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Indeed, a review of the cases addressing this issue hardly reveals a crystalline standard for determining "how much is too much." [12]

In the instant case, the instances in which Plaintiffs' copyrighted materials have been literally reproduced in Defendant's workbook are relatively few in comparison to the length and breadth of Plaintiff's overall works. The Court does not decide today whether Plaintiffs can ultimately establish that Defendant's copying of 15 sentences from the Avatar materials crossed the threshold from de minimis piracy to substantial taking and thereby significantly diminished the value of the Avatar course. However, for purposes of this motion, where Plaintiffs request the drastic remedy of injunctive relief, the Court concludes that Plaintiffs' likelihood of success on this issue is tenuous at best.

Both Avatar and The Source Course are rooted in generic psychological and metaphysical principles, with a principal focus on the power of the human mind over one's life experiences. These concepts have been pondered, discussed, expounded upon, and written about since time immemorial. Although Braun clearly modeled The Source Course after Avatar, there are considerable differences between the two works. The relative length and format of the two works differ significantly. Further, those portions which are ostensibly similar contain different expressions of common concepts. Additionally, the Court is not confident that Plaintiffs can ultimately establish that Defendant's appropriation of 15 short sentences from two pages of the 380 pages of Avatar materials constitutes the substantial similarity required to prove infringement. Consequently, because the Court has considerable doubt that Plaintiff can prevail on the merits of its copyright infringement claim, injunctive relief is not available.[13]

## IV. CONCLUSION

Based on the foregoing discussion, it is hereby **ORDERED** and **ADJUDGED** that Plaintiff's Motion for Preliminary Injunction (Doc. No. 25) is **DENIED.**

12. *See, e.g., Rosemont Enters., Inc. v. Random House, Inc.,* 366 F.2d 303 (2d Cir.1966), *cert. denied,* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967) (appellate court, reversing district court's grant of preliminary injunction, expressed "considerable doubt" that defendant's act of copying 31 lines verbatim and paraphrasing eight additional lines from plaintiff's work was material and substantial enough to constitute copyright infringement); *Martin Luther King, Jr. Ctr. for Social Change, Inc. v. American Heritage Prods., Inc.,* 508 F.Supp. 854 (N.D.Ga.1981), *rev'd on other grounds,* 694 F.2d 674 (11th Cir.1983) (copying of eight sentences sufficient to warrant preliminary injunction); *Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.,* 503 F.Supp. 1137, 1145 (S.D.N.Y.1980) (subsequent history omitted) (infringement found where defendant copied one minute and 15 seconds from plaintiffs' motion picture); *Suid v. Newsweek Magazine,* 503 F.Supp. 146 (D.D.C.1980) (defendant's verbatim copying of 16 word quotation found de minimis); *Rokeach v. Avco Embassy Pictures Corp.,* 197 U.S.P.Q. 155 (S.D.N.Y.1978) (defendant's copying of 100 words out of 70,000 found de minimis); *Amana Refrigeration, Inc. v. Consumers Union of U.S., Inc.,* 431 F.Supp. 324 (N.D.Iowa 1977) (infringement found where defendant copied one paragraph, consisting of three sentences, from plaintiff's work).

13. The Court's conclusion that Plaintiffs have not established a substantial likelihood of success on the merits obviates the need to discuss the other preliminary injunction factors.