NEAL PUBLICATIONS,
et al., Plaintiff

v.

F & W PUBLICATIONS, INC.,
et al., Defendant

No. 3:03 CV 7674.

United States District Court,
N.D. Ohio,
Western Division.

Feb. 26, 2004.

Nathan A. Hall, Stephen A. Rothschild, Shumaker, Loop & Kendrick, Toledo, OH, for Neal Publications, Inc., James E. Neal, Jr., Plaintiffs.

Richard Boydston, Greenebaum, Doll & McDonald PLLC, Cincinnati, OH, for F&W Publications, Inc., defendant.

Richard Boydston, Ulmer & Berne, Cincinnati, OH, for Adams Media, defendant.

Deborah A. Coleman, Hahn, Loeser & Parks, Cleveland, OH, for Corey Sandler, Janice Keefe, defendants.

## ORDER

CARR, District Judge.

This is a copyright infringement case brought by the author and publisher of a manual entitled *Performance Appraisal Phrase Book: Effective Words, Phrases, and Techniques for Successful Evaluations* against the authors and publisher of a work entitled *Effective Phrases for Performance Appraisals: A Guide to Successful Evaluations.* Pending is the plaintiffs' motion for a preliminary injunction, which seeks an order barring the defendants from producing, advertising, offering, selling, or in any way distributing their book, and, as well, directing the defendants to retrieve their publication from all distributors, jobbers, dealers, retailers, and internet sellers.

For the reasons that follow, the motion for the injunction shall be denied.

## Background

Both publications provide personnel officers and others who conduct performance evaluations with suggested phrases and related recommendations for assessing and describing an employee's performance. The phrases are arranged topically, so that a human resource officer or other user of the books can select from a variety of alternative suggestions the phrase or set of phrases that best describes the employee's performance in various areas. The materials submitted in support of the motion for the injunction contain only topic headings and lists of words, terms, and phrases, without any narrative text.

Plaintiffs' manual was the first of its kind when published about twenty-five years ago. Plaintiffs issued their tenth edition in January, 2003. The work has been on best-seller lists, and, is apparently, a widely-used resource in its field. In the interim, at least one other publication (aside from the defendants' work) directed to the same market has been available. According to the plaintiffs, this other competing manual contains no infringing material.

Defendants' work, which, according to plaintiffs, took the defendant authors about three months to complete for the defendant publisher, first appeared in November, 2003. Like the plaintiffs' work, the defendants' publication is a manual of words, terms, and phrases and related material for performance evaluators. Both manuals are organized topically according

to the skill, activity, or attribute being evaluated.

The gravamen of plaintiffs' complaint and motion for injunctive relief is the fact that about forty headings and over a hundred of the listed words, terms, or phrases in the defendants' manual are either the same or substantially the same (i.e., convey the same sense in a slightly different formulation) as those found in the plaintiffs' work.

## Discussion

■ To prevail on a request for preliminary injunctive relief, a plaintiff normally must show: 1) strong likelihood of success on the merits; 2) irreparable harm; 3) possibility of substantial harm to others; and 4) whether an injunction will serve the public interest. *E.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Tesmer v. Granholm*, 333 F.3d 683, 702 (6th Cir. 2003). When, however, an alleged copyright infringement is at issue, an injunction can issue on the basis of a showing of a strong likelihood of success on the merits. *E.g., Microsoft Corp. v. Action Software*, 136 F.Supp.2d 735, 738–39 (N.D.Ohio 2001) (because an injunction against copyright infringement is authorized by statute, plaintiff need only show a strong likelihood of success on the merits to procure an injunction in a copyright case) (citing 15 U.S.C. § 1116; 17 U.S.C. § 502; *U.S. v. Microsoft Corp.*, 147 F.3d 935, 943 (D.C.Cir.1998)).

■ To prevail on their claim of copyright infringement, plaintiffs must show: 1) ownership of a valid copyright and 2) copying by the defendants of original portions of the copyrighted work. *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir.1999). The second element, copying may be inferred by direct evidence or indirectly by a showing that: 1) defendants had access to plaintiffs' work and 2) there are substantial similarities between the defendants' and plaintiffs' works. *Id.*

■ There is no dispute that plaintiffs have a valid copyright, their work is original, and plaintiffs had access to plaintiffs' work. The only disputed issue is whether there are substantial similarities between the two works. As a general rule, the issue of substantial similarity "is primarily a qualitative rather than a purely quantitative analysis, and must be performed on a case-by-case basis." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 839 (10 Cir.1993) (citation and footnote omitted).

■ The ultimate question is "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir.1982). Final determination of the issue of substantial similarity is for the jury. *See, e.g., Tree Pub. Co., Inc. v. Warner Bros. Records*, 785 F.Supp. 1272, 1275 (M.D.Tenn.1991).

■ Plaintiffs contend that in a case such as this, where the alleged plagiarism involves allegations of direct copying of disparate portions of their work, this court should apply the "fragmented literal similarity" test to resolve the question of substantial similarity. This standard originally was suggested and defined by the author, Melville B. Nimmer, of the principal treatise on the law of copyright. *See Nimmer on Copyright* § 13.03[A][2].[1]

As described recently by the Ninth Circuit in *Newton v. Diamond*, 349 F.3d 591,

---

**1.** As the parties note, the Sixth Circuit has not considered whether the "fragmented literal similarity" standard is appropriate. Though this standard is the product of scholarly in-

596–97 (9th Cir.2003), fragmented literal similarity

exists where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure. [Citation omitted]. Because the degree of similarity is high in such cases, the dispositive question is whether the similarity goes to trivial or substantial elements. The substantiality of the similarity is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole. *See, e.g., Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n. 1 (9th Cir.1987) ("[T]he relevant inquiry is whether a substantial portion of the protectable material in the plaintiff's work was appropriated—not whether a substantial portion of defendant's work was derived from plaintiff's work."); *Jarvis v. A & M Records*, 827 F.Supp. 282, 289–90 (D.N.J.1993); 4 Nimmer § 13.03[A][2], at 13–47 to 48 & n. 97. This focus on the sample's relation to the plaintiff's work as a whole embodies the fundamental question in any infringement action, as expressed more than 150 years ago by Justice Story: whether "so much is taken[ ] that the value of the original is sensibly diminished, or the labors of the original author are substantially to an injurious extent appropriated by another." *Folsom v.*

*Marsh,* 9 F.Cas. 342, 348 (C.C.D.Mass. 1841) (No. 4901).

The fragmented literal similarity test "focuses upon copying of direct quotations or close paraphrasing," *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 140 (2nd Cir.1998), and consists of "occasional, but not complete, word-for-word similarity." *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.,* 797 F.2d 1222, 1234 n. 26 (3rd Cir. 1986). The "exact copying of a portion of a work" analyzed with the fragmented literal similarity standard distinguishes that standard from the "comprehensive nonliteral similarity" test, which is used to determine the substantial similarity issue with regard to "an alleged copy that is qualitatively but not exactly similar to a copyrighted work." *Ringgold v. Black Entertainment Television, Inc.,* 126 F.3d 70, 75 n. 3 (2nd Cir.1997) (citing Nimmer, *supra,* § 13.03[A][1] ).

■ To be actionable, copying, including copying that comes within the fragmented literal similarity standard, must be more than de minimis: i.e., must involve copying of more than a small and insignificant portion of the plaintiff's work. *Warner Bros. Inc. v. American Broadcasting Companies, Inc.,* 720 F.2d 231, 242 (2nd Cir.1983). Consideration of "the amount of the copyrighted work that is copied," the court noted in *Ringgold,* 126 F.3d at 75, "is especially pertinent to exact copying." [2]

vention, rather than common law decision or statutory directive, other courts generally, and nearly unanimously, have uncritically used this standard to resolve cases involving plagaristic acquisition of diverse chunks of material. *See, e.g., Tree Pub. Co., Inc. v. Warner Bros. Records,* 785 F.Supp. 1272, 1275 (M.D.Tenn.1991). *But see Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 924 F.Supp. ₁1559, 1566 (S.D.Cal.1996) ("The Court declines to follow Professor Nimmer's categories."). The parties suggest no better analytic framework for this case, and defen-

dants make no persuasive claim that it should not be used. In any event, I find it to be a sensible and helpful guide to resolving the issue before me.

2. Mere enumeration of the extent of copying is, however, not particularly helpful, and courts have reached apparently inconsistent results, if their decisions are looked at simply from the standpoint of the numbers of words copied. *Compare Martin Luther King, Jr. Ctr. for Social Change, Inc. v. American Heritage Prods., Inc.,* 508 F.Supp. 854 (N.D.Ga.1981), *rev'd on other grounds,* 694 F.2d 674 (11th

Even though the *de minimus* rule is applicable in cases of fragmented literal similarity, the significance within the original work of the material copied from that work remains an important consideration. Even if the quantity of copied material "is relatively small," it may still be deemed "substantial if it 'is of great qualitative importance to the [pre-existing] work as a whole.'" *Williams v. Broadus*, 2001 WL 984714, *3 (S.D.N.Y.) (citing *Jarvis v. A & M Records*, 827 F.Supp. 282, 291 (D.N.J. 1993) (quoting *Werlin v. Reader's Digest Assoc.*, 528 F.Supp. 451, 463 (S.D.N.Y. 1981))). As stated in *Jarvis*, "[t]he proper question to ask is whether the defendant appropriated, either quantitatively or qualitatively, 'constituent elements of the work that are original', such that the copying rises to the level of an unlawful appropriation." 827 F.Supp. at 290 (*quoting Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)).

■ Applying these standards, I conclude that the plaintiff has failed to show a substantial likelihood of success on the merits. Though the list of copied or paraphrased topic headings and words, terms, and headings, is lengthy—totaling around 140 different entries—those items appear to represent a small fraction of the contents of plaintiffs' manual. They are, moreover, single words or short phrases of a couple or few words—not lengthier segments, or complete portions of particular lists.

In any event, and though neither party has favored the court with complete copies of the works at issue, it appears from the excerpts in the record that the defendants, even if they could be found to have lifted more than a de minimus number of entries, have not taken so much "that the value of the original is sensibly diminished, or the labors of the original author are substantially to an injurious extent appropriated by another." *Folsom, supra,* 9 F.Cas. at 348. It is not sufficiently certain to justify issuing an injunction that the jury will find that the defendants either took " 'constituent elements of the work that are original', such that the copying rises to the level of an unlawful appropriation", *Jarvis, supra,* 827 F.Supp. at 290, or the copied entries are " 'of great qualitative importance to the [pre-existing] work as a whole.'" *Williams supra,* 2001 WL 984714, *3.

This conclusion is supported by consideration of the nature of the plagiarized work. While plaintiff James E. Neal's first edition was the first work of its kind, its current edition (and, one presumes, its predecessors) use adjectival and adverbial words, terms, and phrases that, on the whole, appear to be rather commonplace, particularly in the area of performance evaluation. While he was the first to collect and collate them, a jury could find that they remain in the language for others to

Cir.1983) (copying of eight sentences warranted preliminary injunction); *Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.*, 503 F.Supp. 1137, 1145 (S.D.N.Y.1980) (infringement found where defendant copied one minute and 15 seconds from plaintiffs' motion picture); *and Amana Refrigeration, Inc. v. Consumers Union of U.S., Inc.*, 431 F.Supp. 324 (N.D.Iowa 1977) (copying of one three-sentence paragraph constituted infringement) *with Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir.

1966) (reversing district court's grant of preliminary injunction, court expressed "considerable doubt" that verbatim copying of thirty-one lines and paraphrasing of eight additional lines was material and substantial enough to constitute infringement); *Suid v. Newsweek Magazine*, 503 F.Supp. 146 (D.D.C.1980) (verbatim copying of sixteen word quotation de minimis); *and Rokeach v. Avco Embassy Pictures Corp.*, 197 U.S.P.Q. 155 (S.D.N.Y.1978) (copying of 100 words out of 70,000 de minimis).

find and use, even without reference to his manual.

Other courts have likewise looked to the nature of the allegedly plagiarized work to ascertain whether infringement has occurred. Thus, in *Palmer v. Braun*, 155 F.Supp.2d 1327, 1336 (M.D.Fla.2001), the court, declining to issue an injunction, stated:

> Both [the copied work] and [the alleged infringing work] are rooted in generic psychological and metaphysical principles, with a principal focus on the power of the human mind over one's life experiences. These concepts have been pondered, discussed, expounded upon, and written about since time immemorial. Although [defendant] clearly modeled [the alleged infringing work] after [the copied work], there are considerable differences between the two works. The relative length and format of the two works differ significantly. Further, those portions which are ostensibly similar contain different expressions of common concepts.

156 F.Supp.2d at 1336.

To be sure, the works at issue in this case do not appear to encompass "metaphysical principles ... [that] have been pondered, discussed, and expounded upon, and written about since time immemorial." The works do, however, employ words, terms, and phrases that appear in large part to be generic, and which in may well not be unique in its field to plaintiffs' work.

Under all the circumstances presented thus far, I decline to grant the request to issue preliminary injunctive relief. An injunction, by its nature, remains, " 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (quoting 11A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Fed-

eral Practice and Procedure § 2948, pp. 129–130 (2d ed.1995)).

This is not to discount the seriousness of defendants' alleged conduct. Plagarism, if committed, is a uniquely vile and utterly dishonorable act of intellectual dishonesty, thievery, and fraud. One whose vineyard is found planted with another's seeds will not be spared the uprooting of all that has been brought forth therein, or the loss of all the ill-begotten gain he sought to harvest therefrom.

### Conclusion

Because I do not find that the plaintiff's likelihood of success on the merits is great, I decline to grant the injunctive relief it requests. It is, therefore,

ORDERED THAT plaintiff's motion for a preliminary injunction be, and the same hereby is denied.

So ordered.